My name is Arthur Reed and I'm the attorney for Kirk Dewitt, who is the appellant and the defendant in this case. My case is a little different than the other four. They all involve child pornography. But in my case, the defendant signed an appeal waiver and of course that covered a certain arithmetic range of the sentence. My client came within that range and so the appeal waiver would block this appeal unless he can show that his sentence was unconstitutional. And that's what I tried to do in my opening brief. The other people have argued that the guideline in question 2G 2.2 is unreasonable. I have to show that it's unconstitutional. And I hope to have made the argument that it is, in that it violates separation of powers. And the case that I've cited in my opening brief is a district court case from Oregon entitled United States v. Detweiler, where the district judge there specifically addressed the question of whether the Feeney Amendment, not the guidelines generally like Ms. Tretter, but specifically the Feeney Amendment, which is the amendment that was passed in Congress that resulted in the enhancements that we've been talking about today. Now, the government says in their answering brief that since Congress is undisputably the primary sentencing authority, there can't be a violation in this case. In other words, the separation of powers would seemingly relate to tension between the judiciary, which is where the Sentencing Commission is located, and Congress. However, what I'm suggesting and what Detweiler found was that the tension was not between Congress and the judiciary, but rather the judiciary and the executive branch, which is where the U.S. Attorney's Office is located. And Detweiler found that there was a violation of separation of powers in that both the obligation and the authority to prosecute a case and to determine what the sentence would be had been combined in the government, in the U.S. Attorney's Office. That's what Detweiler said. And I think you can appreciate that my argument here is a little bit different than what the other four cases said, because this is somewhat of a sweeping argument. In other words, Detweiler, which is what I base my contention on, that there's a separation of powers violation here, said that the government had assumed both sentencing authority and, of course, their statutory right as prosecution by way of the Feeney Amendment. And I want to stress that what I'm attacking here is the Feeney Amendment. And specifically, Detweiler said that... Kagan. Was Detweiler decided before or after Booker? Booker was decided in 2005. Oh, wait a minute. I'm sorry. I'm sorry. That's correct. Isn't that the key to everything? Because in the end, the judiciary retains discretion under the current situation. I would emphatically say no to that, Your Honor, because what the Feeney Amendment did is what Detweiler found a problem with, and that really has nothing to do with Booker. It has to do with the aggrandizing. I'm sorry. I'm not pronouncing that right, but I think you know what I mean. The separation of powers violation occurs where one branch has the authority of the other branch aggrandized in that branch, if I'm saying that right. In other words, Detweiler said that by virtue of the Feeney Amendment, where these rather large sentencing enhancements suddenly became a tool for the government as far as charging was concerned, that that affected plea bargaining. Detweiler also noted that a third point for acceptance of responsibility could only be awarded to a defendant if the government agreed, and what Detweiler seemed to feel about that. And you don't think that all of this was being driven by the fact that these were mandatory guidelines at that point? No, Your Honor. I think it was driven by what I would characterize a lynch hunt in Congress. No, I'm talking about the Detweiler analysis. I don't know the answer to that. It wasn't that the context and the point that the problem here was that Congress was dictating to the judiciary. It's no longer dictating to the judiciary and to the commission. It's not dictating. It may be dictating to the commission, but it's not dictating to the judiciary. I think Detweiler said that it was doing that. I think that's a good point. I'm saying that after Booker, it isn't. No, but see, one of the other things that the Feeney amendments did was say that review of a district court's sentencing decision will no longer be for abuse of discretion, but rather it will be de novo review. Now, see, if you think about that, what that does is it puts the judges on the bench. But it doesn't apply anymore. I'm not able to say that it doesn't. Now, if you're telling me that it doesn't, I assume that's correct. It's reasonableness review. Do you have any reason to think it's different from every other review? Read what now? Reasonableness review, i.e., under Booker, we review for reasonableness. Yes. Okay. I'm not able to speak to that. My understanding was that the standard of review would be de novo. In any event, the last thing I would like to say is that, as the Court may know, the Feeney amendment created a reporting requirement whereby if a district judge departs downwards from what the guidelines say, that fact must be reported both to Congress and to the Department of Justice, along with the identity of the judge. Now, this, of course, has nothing to do with Booker or with the reasonableness of the sentence, but I suggest that it has a great deal to do with encroachment on the judiciary by the executive branch, and with that, unless the Court has questions, I would be inclined to submit it. Thank you very much. Thank you, Your Honor. May it please the Court, Joe Akrotirianakis, assistant United States attorney. As the Court is aware of the version that Debtweiler was pre-Booker, that it basically came to the same conclusion as Booker, although by a different route, and that Booker has overtaken it in that standard. I agree with that, Your Honor, and I can stand here and talk about Kirk DeWitt being a child molester and abuser of women, but unless the Court has questions, I'm inclined to take the time to hear the question. We've read everything that both of you have submitted. Thank you very much. The case of United States v. DeWitt is submitted, and we are in recess until tomorrow. All rise. Judge, do you need anything? Judge, how soon are we going to have conference? What was it like, five minutes, ten minutes? That's fine. Okay. Whatever you want. I just need to know. Okay. Thank you all very much. This Court is in recess until tomorrow at 9 a.m. What did Mark have? Good morning, Judge. Look at his name. It's almost as long as yours. Acro to Anarchis. Wow, that's great. What's his nationality? He's a Greek. That's what I would say. Maybe Greek or African. All in? Yes. Closed? Well, if you have any way to...
judges: Fletcher B. , Berzon, Callahan